FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 AUG 16  AM 8: 43

STEPHAN HARRIS, CLERK
CASPER

Danielle M. Mathey (Wyo. Bar. No. 7-4956) (dmathey@matheylawoffice.net)
MATHEY LAW OFFICE, P.C.
189 N. 1ˢᵗ West St.
Green River, Wyoming 82935
Telephone: (307) 875-5872

Jonathan O. Hafen (Wyo Bar No. 7-4881) (application for admission to be filed)
(jhafen@parrbrown.com)
Bryan S. Johansen (pro hac vice to be filed) (bjohansen@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Brian M. Gargano (pro hac vice to be filed) (bgargano@nguyen-chen.com)
NGUYEN CHEN LLP
11200 Westheimer Ste 120
Houston, Texas 77042
Telephone: (832) 767-0339

*Attorneys for Plaintiff Dr. Limin She*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DR. LIMIN SHE, an individual<br><br>    Plaintiff,<br><br>vs.<br><br>HEALTH LINE INTERNATIONAL CORP., a Wyoming company, IMSI MEDICAL, INC., JOEL FAULKNER, an individual, ELLIOT FAULKNER, an individual, AARON FAULKNER, an individual, GLORIA FAULKNER, an individual, ESTRELLA MEDICAL, LLC.<br><br>    Defendants. | **VERIFIED COMPLAINT**<br><br><br>Case No. 18CV135-F<br><br>Judge _____ |

Receipt # CA5002100
Summons:_____ Issued
        ✓ not Issued

Plaintiff Dr. Limin She, by and through his attorneys, hereby files this Verified Complaint against Defendants Health Line International Corp. ("HLIC"), IMSI Medical, Inc. ("IMSI"), Joel Faulkner ("Faulkner"), Elliot Faulkner, Aaron Faulkner, Estrella Medical, LLC ("Estrella Med"), and Gloria Faulkner (collectively, "Defendants"), and alleges as follows:

## PARTIES

1.      IMSI is a corporation founded by Faulkner and formed under the laws of the State of Utah.  Faulkner is IMSI Medical's registered agent.  IMSI's principal place of business is 5675 West 300 South, Salt Lake City, Utah 84104.

2.      HLIC is a corporation formed under the laws of the State of Wyoming.  Dr. She and Faulkner each has a 50% ownership interest in the company.  Upon information and belief, Faulkner holds his HLIC shares in the name of IMSI.

3.      Faulkner is the CEO and a Director of HLIC.  Faulkner is also a Director of HLIC Foshan Plastech Corporation ("CHLIC").

4.      Dr. She is an individual residing in Foshan, China. In addition to owning 50% of HLIC, he is also a Director of HLIC.  Dr. She is CHLIC' s President and is a Director of CHLIC.

5.      Gloria Faulkner is Faulkner's spouse, the former Project Manager for HLIC, and current owner of Estrella Med, a competitor to HLIC and CHILC.

6.      Elliot Faulkner is the son of Faulkner and Gloria Faulkner and is the Vice President of Business Development for HLIC.

7.      Aaron Faulkner is the son of Faulkner and Gloria Faulkner and is the Director of Engineering and Product Development for HLIC.

8.      Estrella Med is an LLC created under the laws of Utah by the Faulkners for the purpose, on information and belief, of competing with and eventually replacing HLIC.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332. There is complete diversity among the parties, this matter involves numerous violations of Wyoming law, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over the Defendants consistent with the requirement of the Due Process Clause of the United States Constitution and the Wyoming Long Arm Statute. *See* Wyo. Stat. Ann. § 5-1-107.

11.     Jurisdiction is proper over HLIC under Wyo. Const. Art. 5, § 10 and Wyo. Stat §§ 5-1-107, 5-3-102, 5-9-128, 130 as HLIC is organized under and subject to the laws of Wyoming.

12.     Jurisdiction is proper over Faulkner, IMSI, Gloria Faulkner, Elliott Faulkner and Aaron Faulkner under Wyo. Const. Art. 5, § 10 and Wyo. Stat §§ 5-1-107, 5-3-102, 5-9-128, 130.

13.     Specifically, Faulkner is the CEO of HLIC, a Wyoming company.

14.     IMSI, which on information and belief is owned and controlled solely by Faulkner, holds 50% ownership in HLIC, a Wyoming company.

15.     Faulkner is the registered agent of HLIC, which has a Wyoming business address of 94127 Hwy 89, Thayne, Wyoming 83127.

16.     Faulkner and his family own the property located at 94127 Hwy 89, Thayne, Wyoming 83127, which serves as both a vacation residence and the registered agent address for HLIC, a Wyoming company.

17.     Gloria Faulkner was an employee of HLIC, a Wyoming company.

18.     Elliott Faulkner is Vice President of HLIC, a Wyoming company.

19.     Aaron Faulkner is Director of Engineering and Product Development of HLIC, a Wyoming company.

20.     Further, Faulkner, IMSI, Gloria Faulkner, Elliott Faulkner, and Aaron Faulkner each have caused injury within the State of Wyoming, as more specifically described herein.

21.     Jurisdiction is also proper over Faulkner and Gloria Faulkner as they own and utilize the vacation residence located at 94127 Hwy 89, Thayne, Wyoming 83127.  As such, Faulkner and Gloria Faulkner have purposely availed themselves of the privilege of acting in the forum state of Wyoming.

22.      Defendants have purposefully availed themselves of the privilege of acting in Wyoming as employees and agents of HLIC, a Wyoming corporation and have caused harm to HLIC, a Wyoming corporation and Dr. She, a director and shareholder of HLIC, a Wyoming corporation.

23.     Jurisdiction is also proper over Estrella Med as its actions have targeted and have inflicted injury within the State of Wyoming, namely against HLIC, a Wyoming company, and against Dr. She, in his capacity as director and shareholder of HLIC as more specifically described herein.

24.     Jurisdiction is also proper over Estrella Med due to the actions of Gloria Faulkner who was both an employee of HLIC, a Wyoming company and owner and operator of Estrella Med.

25.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d).

26. As this matter involves claims and questions solely under Wyoming law, both jurisdiction and venue in Wyoming is appropriate and proper.

## ALLEGATIONS OF FACT

27. IMSI is a corporation founded by Faulkner and formed under the laws of the State of Utah.

28. In 2005, Dr. She and Faulkner partnered to form HLIC, a medical device developer, manufacturer and distributor that produces a comprehensive line of products for vascular access, infusion therapy, and infection control.[1] Such products include IV tubing, PICC, CVC, and catheters.

29. In 2006/2007, HLIC entered into a joint venture with Foshan Longhao Silicon Product Ltd, and formed a new company, CHLIC.

30. The purpose of CHLIC is to manufacture catheter and related products. Specifically, CHLIC was created to accomplish the production and sales of biomedical polymer materials and products (including medical catheters and their accessories) and sensors.

31. HLIC owns 69% of CHLIC (split 50/50 between Faulkner and Dr. She) and Foshan Longhao owns the remaining 31%.

32. Foshan Longhao's legal representative, Fudong Hou, is the general manager of CHLIC and controls the day-to-day operations.

33. As noted above, Faulkner hired at least three family members, Gloria, Elliott and Aaron as senior HLIC executives without the consent of Dr. She.

---

[1] *See* Health Line Website at: https://www.hlic.net/

34.     At no time was Dr. She consulted about these hiring decisions and at no time did he approve them.

35.     From December 2016 to December 2017, Faulkner's wife Gloria was appointed by Faulkner was the "Project Manager" for HLIC and received a salary from HLIC in the amount of $45,660.00. Ex. "A".

36.     During the time of her employment with HLIC, and on information on belief, in cooperation with her husband and children Elliott and Aaron, Gloria Faulkner created and operated Estrella Med.[2]

37.     Estrella Med, owned and operated by Gloria Faulkner, was formed in January 2017, shortly after she was hired by Faulkner as Project Manager for HLIC. Ex. "B".

38.     The address for Estrella Medical, LLC is the same as HLIC both on their respective websites and on the Utah Business Entity Search website.

39.     Gloria Faulkner owned and operated Estrella Med while she was still an employee of HLIC and on HLIC's payroll. Ex. "C".

40.     Like HLIC, Estrella Med produces and/or sells medical devices such as PICC lines and catheters including for vascular access.[3]

41.     Without Dr. She's knowledge and consent, upon information and belief, Estrella Med is utilizing HLIC's resources including overlapping employees and sharing office space with HLIC.

---

[2] Gloria Faulkner lists on her LinkedIn site she was HLIC project manager from December 2016 to December 2017. *See* https://www.linkedin.com/in/gloria-garcia-faulkner-054557124/

[3] https://www.estrellamed.com/

42.     Estrella Med does not own any intellectual property rights to such products or technology including FDA 510Ks.

43.     The products Estrella Med produces and/or sells are substantially similar to those produced and sold by HLIC.[4]

44.     The customers Estrella Med targets and serves are substantially similar to those HLIC serves and targets.

45.     At no time did Faulkner consult with Dr. She about the formation of Estrella Med. Dr. She never approved the creation or operation of Estrella Med.

46.     Dr. She receives no financial benefits from Estrella Med's operations.

47.     Neither Faulkner nor his wife Gloria ever presented the Estrella Med business opportunity to HLIC's Board.

48.     Given Faulkner's expertise and experience in the medical device market and the addresses and products shared by HLIC and Estrella Med, on information and belief, Faulkner orchestrated and created Estrella Med through his wife Gloria Faulkner, in order to conceal his involvement.

49.     On information and belief, Faulkner's true purpose for Estrella Med was to exclude Dr. She from his share of HLIC profits by creating a new company for Faulkner and his family.

50.     As such, on information and belief, Faulkner has calculated and orchestrated a scheme to obtain dominion over all HLIC's intellectual property so Estrella Med, wholly owned by Faulkner's immediate family members, could appropriate it for Estrella Med's benefit.

---

[4] *Compare*, https://www.hlic.net/ with https://www.estrellamed.com/

51. In 2017, Dr. She developed severe medical problems including myocardial ischemia. As a result, Dr. She was instructed by his physicians to "take it easy" and recuperate.

52. In summer 2017, Dr. She's father was diagnosed with severe coronary artery stenosis and in the fall 2017.

53. During this same time period Dr. She's mother became gravely ill and Dr. She had to take care of her.

54. Faulkner was well aware of Dr. She's medical issues including Dr. She's medical necessity to reduce his stress level for his health and Dr. She's need to care for his ailing parents. Ex. "D".

55. As a result of Dr. She's medical issues and his need to take care of his ailing father and mother, Dr. She made the decision in the fall of 2017 to sell his HLIC shares so he could retire.

56. Faulkner was well-aware of Dr. She's decision and need to retire. *Id.*

57. Consistent with his expressed desire to sell his HLIC shares in order to be able to retire, Dr. She began approaching potential buyers.

58. One such buyer, Juliu Investments, was very interested in purchasing Dr. She's shares and also sought to purchase Faulkner's shares.

59. Dr. She and Juliu began negotiations towards an Equity Transfer Framework Agreement ("Sale Agreement") in January 2018 through which Juliu would purchase Dr. She's HLIC shares.

60. Dr. She and Juliu executed the Sale Agreement in May 2018 in which Dr. She agreed to sell his shares to Juliu.

61.     Both the sale and the sale price are contingent on Dr. She and Juliu conducting due diligence and auditing both HLIC and CHLIC.

62.     Dr. She first made Faulkner aware of the impending sale of his shares to Juliu in late February 2018. *See* Ex. "E"

63.     Faulkner informed Dr. She he was also interested in selling his shares to Juliu and Dr. She granted Faulkner permission to contact Juliu.

64.     Thereafter, both Faulkner and Dr. She were engaged in negotiations with Julia to sell their respective shares. *Id.*

65.     Faulkner's emails to Juliu and Dr. She in March 2018 demonstrate Faulkner did not object to Dr. She selling his shares to Juliu; nor could he, as Faulkner has no legal right to object to such a sale. Ex. "F".

66.     To facilitate the potential sale of their HLIC shares, Faulkner agreed to allow Juliu to audit and visit HLIC in Utah. *Id.*

67.     However, soon thereafter Faulkner's negotiations broke down when Faulkner demanded a share price that was dramatically more than Juliu was willing to pay.

68.     Juliu's rejection of Faulkner's price demand angered Faulkner.

69.     Faulkner became uncooperative and belligerent at the prospect of having Juliu as his new business partner once Dr. She sold his half of HLIC to Juliu. *See* Ex. "G".

70.     Needing to retire for his health and to take care of his ailing parents, Dr. She reached an agreement with Juliu to sell his 50% interest in HLIC and corresponding 34.5% stake in CHLIC to Juliu for about $14 to $15 million contingent on the due diligence investigation and audit.

71.     Consistent with his agreement with Juliu, Dr. She, in early June 2018, took steps to effectuate the sale to Juliu.

72.     HLIC's Bylaws are sparse and do not restrict Faulkner or Dr. She's ability to sell their respective Health Line shares. Ex. "H".  Notably, Art. VI, Sec. 6.4 of the HLIC Bylaws states:

> Subject to applicable Wyoming law, every director shall have the right at any reasonable time to inspect all books, records, and documents of every kind and the physical properties of the corporation and each of its subsidiary corporations for purposes relating to his or her status as director. This inspection by a director may be made in person or by an agent or attorney and the right of inspection includes the right to copy and make extracts of documents.

73.     In his capacities as director and shareholder of HLIC, Dr. She formally requested access to HLIC's books and records. Ex. "I".

74.     Dr. She's request is authorized under both HLIC's Bylaws and Wyoming law and was made in good faith and for the proper purpose of effectuating his sale of his shares to Juliu. *Id.*

75.     Despite Dr. She's clear legal right of inspection, Faulkner refused to allow Dr. She to inspect HLIC's records.

76.     Instead, Faulkner attempted to place various conditions on an inspection, contrary to his previous agreement to allow the inspection so that Juliu could complete its due diligence. Ex. "J".

77.     On June 15, 2018, Dr. She sent a second written demand to Faulkner requesting inspection of HLIC's corporate books and records. Ex. "K".

78.     Dr. She's request is authorized under both HLIC's Bylaws and Wyoming law and is in good faith and for the proper purpose of effectuating his sale of his shares to Juliu. *Id.*

79.     Again, Faulkner improperly refused Dr. She's lawful request and unlawfully attempted to condition the inspection. Ex. "L".

80.     As a result of Faulkner's surprising and unanticipated refusal to comply with HLIC's Bylaws and Wyoming law, Dr. She felt it prudent to investigate Faulkner's true motivation for refusing the inspection.

81.     Dr. She was particularly concerned because time was of the essence for him to accomplish the inspection.

82.     Specifically, Juliu was getting ready to walk away from the deal as the result of HLIC's refusal to allow access to its corporate records.

83.     Although Dr. She does not yet have access to HLIC's corporate books and records, his investigation of Defendants to date has revealed, among other things, self-dealing, misappropriation of HLIC's funds and assets, potential tax violations, nepotism in HLIC's hiring practices, trade secret violations, usurping corporation opportunities, breaches of fiduciary duty, breaches of the duty of loyalty, conversion, and gross mismanagement committed by Faulkner as CEO and Director of HLIC and his family as senior HLIC executives.

84.     Given these findings, the need for the inspection became even more urgent. The results of the investigation to date make clear that Faulkner and his family have been plundering HLIC, including transferring HLIC's assets to Estrella Med, so that Estrella Med could take HLIC's place in the market.

85.     As a result, On July 26, 2018, Dr. She sent a third and final urgent demand to Faulkner requesting inspection of HLIC's corporate books and records. Ex. "M".

86.     Dr. She's urgent demand is in good faith and was for the permissible purposes of, among other things:

        a.     providing access to Dr. She and Juliu to conduct due diligence for the sale of Dr. She's shares in HLIC;

        b.     investigating misappropriation of HLIC corporate funds and assets by Mr. Faulkner and his family;

        c.     investigating the reasons why Dr. She did not receive his distribution in 2017 given that HLIC's financial statements demonstrate HLIC generated more than $1.5 million in profit;

        d.     investigating HLIC's business practices to verify they are ethical and lawful;

        e.     investigating Faulkner's attempts to destroy CHLIC;

        f.     investigating the reason why Faulkner is preventing Dr. She from selling his shares;

        g.     making a listing of each HLIC asset and determining the value of HLIC assets;

        h.     determining the per share value of HLIC; and

        i.     otherwise investigating mismanagement of HLIC.

*Id.*

87.     Faulkner again refused the demand but conditioned Dr. She's lawful audit this time on a mutual audit. Ex. "N"

88.      Counsel for Dr. She responded to Faulkner's counsel agreeing to the mutual audit as time is of the essence for Dr. She to save HLIC and sell his shares to Juliu. Ex. "O"

89.     Faulkner again refused to cooperate and asserted new and unacceptable conditions on the performance of the audit and again reiterated his refusal to comply with Dr. She's lawful demand to inspect HLIC's books and records. Ex. "P"

90.     Given Faulkner's and his family's unlawful and unethical conduct, Dr. She's shares are rapidly losing value.

91.     As such, Faulkner must be removed and enjoined from acting as an officer and director of HLIC.

92.     Significantly, Faulkner's wrongful denial of Dr. She's lawful demand has made it impossible for Dr. She to determine the specifics of  Faulkner's various breaches of fiduciary duties, including unlawful and unethical conduct, as Faulkner is affirmatively concealing any such discovery facts from Dr. She.

93.     Moreover, Faulkner's wrongful denial of Dr. She's lawful demand has made it impossible for Dr. She to both perform his obligations under his Sale Agreement with Juliu and sell his shares to Juliu.

94.     Unless the situation is immediately rectified, Juliu will walk away from the deal, Dr. She will not be able to sell his shares, and Dr. She will be in default under the Sale Agreement with Juliu.

95.     Accordingly, emergency relief granting Dr. She access to inspect HLIC's corporate books and records is necessary to prevent irreparable harm to Dr. She.

## FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief for Accounting under Bylaws and Wyo. Stat. Ann. § §17-16-1602 and 1605(a) against Faulkner, IMSI and HLIC)

96.     Dr. She realleges and reasserts all allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

97.     Under HLIC's Bylaws, Dr. She, as a director of the HLIC, is entitled to inspect all books and records of HLIC.

98.     Dr. She seeks declaratory and emergency injunctive relief from this Court to inspect HLIC's corporate books and records to effectuate Dr. She's pending sale of his shares to Juliu, to avoid default under the sales agreement, and investigate Faulkner's and his family's unlawful and unethical conduct, and to prevent Dr. She's shares from losing value as Faulkner and his family continue to plunder HLIC.

99.     Under Wyoming Statute Annotated § 17-16-1605(a) a director of a corporation is entitled to inspect and copy the books, records and documents of the corporation at any reasonable time.

100.    Under Wyoming Statute Annotated § 17-16-1602 a shareholder of more than 5% of a company is entitled to inspect and copy the accounting records of the company, among other documents, upon providing five days written notice.

101.    Dr. She as a director and 50% shareholder of HLIC made express demands in good faith, for proper purposes with no less than five business days' notice, to inspect the books and records of HLIC's United States operations.

102.    Faulkner has expressly and repeatedly refused to provide access to HLIC's books and records upon reasonable notice.

103.    Dr. She is entitled to: (1) a declaration that he is allowed by contract and statute to inspect the books and records of HLIC, (2) an order compelling Faulkner and HLIC to allow Plaintiff and/or his chosen representative to inspect the books and records of HLIC, and/or (3) an order from the Court prohibiting Defendants from inhibiting Plaintiff's right to inspect the books and records of HLIC.

104.    Dr. She is further entitled to immediate injunctive relief allowing the inspection of HLIC's corporate books and records as Dr. She will sustain irreparable harm and injury from Faulkner's actions, which continue to diminish the value of Dr. She's shares and prevent Dr. She from effectuating his sale to Juliu.

105.    Dr. She has a very high probability of success on the merits.

106.    The threat of and continuing injury to Dr. She outweighs the harm that the injunction may cause to Faulkner.

107.    If an injunction is issued, it will not adversely affect the public interest.

108.    The requested injunctive relief is necessary to protect Dr. She's legitimate business interests.

109.    Under Wyoming Statute Annotated §§ 17-16-851 and 852, Dr. She is likewise entitled to costs and attorney's fees incurred in compelling Defendants to comply with their contractual and statutory obligations.

## SECOND CAUSE OF ACTION
### (Breach of Contract- Bylaws against Faulkner, IMSI, and HLIC)

110.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95.

111.    The Bylaws of HLIC constitute a binding and enforceable agreement.

112.    Defendants have materially breached the Bylaws by denying Dr. She, as director and shareholder of HLIC, from access to HLIC's corporate books and records.

113.    Defendants have further materially breached the Bylaws by denying Dr. She, as shareholder of HLIC is entitled to his rightful distribution from HLIC's 2017 profits.

114.    Moreover, Defendants have routinely violated Wyoming Statute Annotated §17-16-833 as Faulkner/IMSI has received his/its full distributions while Dr. She has not despite Faulkner/IMSI and Dr. She both having 50% interest in HLIC and its profits.

115.    Plaintiff has fully performed all his obligations under the Bylaws.

116.    As a direct and proximate result of the material breaches by Defendants, Plaintiff has suffered and continue to suffer actual and consequential damages in an amount to be determined at trial.

117.    Plaintiff is entitled to actual and/or liquidated damages, to an award of costs and attorney fees, and to all other such relief as may be available.

### THIRD CAUSE OF ACTION
#### (Breach of Fiduciary Duty)
#### (Individually against Faulkner, IMS, HLIC, Gloria Faulkner, Elliot Faulkner, and Aaron Faulkner)

118.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95.

119.    Under Wyoming Statute Annotated §§ 17-16-830, 831, 833, and 842, Faulkner as CEO and Director of HLIC owes the fiduciary duties of loyalty, good faith, care, and fair dealing to Dr. She as both HLIC Director and Shareholder.

120.    Faulkner, IMSI and HLIC breached the duties of loyalty, good faith, fair dealing and care owed to Dr. She as a shareholder and were breached by Faulkner in the scope of his duties by his conduct and/or inaction by, among other things,

      a.    attempting to extort Dr. She by withholding his consent for the inspection in exchange for Dr. She fulfilling unrelated demands to Faulkner's satisfaction;

      b.    wrongfully withholding HLIC's distribution to Dr. She;

      c.    unilaterally and impermissibly hiring and appointing members of his immediate family to senior executive positions;

      d.    misappropriating corporate funds by misusing HLIC's corporate credit for personal business, including but not limited to family vacations and merchandise;

      e.    allowing Faulkner's wife and Estrella Med to use HLIC assets (including IP assets) and compete with HLIC and CHLIC

      f.    usurping the corporate opportunity that should have been provided to HLIC, but was instead provided to Estrella Med;

      g.    sending disparaging letters to CHLIC's suppliers in order to influence the supplier to stop dealing with CHLIC and furthering Faulkner and his family's scheme to replace HLIC with Estrella Med; and

      h.    mismanaging HLIC to the point where HLIC's shares have been devalued.

121.    As HLIC employees and/or senior executives,  Gloria Faulkner, Elliot Faulkner and

Aaron Faulkner owe the fiduciary duty of loyalty to HLIC and Dr. She, in his capacity as director

and shareholder of HLIC.

122.    Gloria Faulkner, Elliot Faulkner and Aaron Faulkner have breached their fiduciary

duties owed to Dr. She as director and shareholder of HLIC by their conduct in devaluing Dr. She's

shares, misusing corporate funds, misappropriating HLIC assets (including IP assets), and using

Estrella med to compete with HLIC and CHLIC.

123.    Defendants' various breaches of fiduciary duties to Dr. She have irreparably

harmed and damaged Dr. She.

124.    As a result of Defendants' unlawful and unethical conduct Dr. She has not

received his HLIC distribution, his HLIC shares and interest in CHLIC have been devalued, Dr.

She has been denied his right to inspect HLIC's corporate books and records, and Dr. She cannot

sell his shares to Juliu resulting in the need to litigate to enforce his rights.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
**(Dr. She Derivatively on Behalf of HLIC against Faulkner, IMSI, Gloria Faulkner, Elliot**
**Faulkner and Aaron Faulkner)**

125.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through

95.

126.    Dr. She brings this claim derivatively in the right and for the benefit of HLIC to

redress injuries suffered by HLIC as a direct result of Faulkner's and IMSI's breaches of fiduciary

duties owed to HLIC as an officer, director and shareholder of the company.

127.    Under Wyoming Statute Annotated §§ 17-16-830, 831, 833, and 842, Faulkner as CEO and Director of HLIC owes the fiduciary duties of loyalty, good faith, care, and fair dealing to HLIC including its directors and shareholders.

128.    Dr. She is a shareholder of HLIC, was a shareholder of HLIC at the time of the wrongdoing alleged herein and has been a shareholder of HLIC continuously since that time.

129.    This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

130.    Dr. She will adequately and fairly represent the interests of HLIC and its shareholders in enforcing and prosecuting its rights.

131.    Aside from the demands for inspection, Dr. She has not made any demand on HLIC to institute this action because such a demand would be a futile and useless act because HLIC only has two directors, one of which is Faulkner, the alleged wrongdoer.

132.    As such, HLIC's board of directors is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

133.    By reason of his positions as an CEO, officer and director of HLIC, and because of his ability to control the business and corporate affairs of HLIC, Faulkner owed HLIC fiduciary obligations of good faith, care, loyalty and candor, and is required to use his utmost ability to control and manage the company in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of HLIC and not in furtherance of his personal interest.

134.    As 50% shareholder of HLIC, IMSI owes the fiduciary duty of loyalty to Dr. She in his capacity as director and shareholder of HLIC.

135.    As HLIC employees and/or senior executives, Gloria Faulkner, Elliot Faulkner and Aaron Faulkner owe the fiduciary duty of loyalty to HLIC and Dr. She in his capacity as director and shareholder of HLIC

136.    Faulkner breached his fiduciary duty to HLIC by virtue of the self-dealing and intentional injuries he inflicted on Health Line as alleged herein.

137.    Gloria Faulkner, Elliot Faulkner and Aaron Faulkner have breached their fiduciary duties owed to Dr. She in his capacity as director and shareholder of HLIC by their conduct in devaluing HLIC shares, misusing corporate credit, misappropriating HLIC assets (including IP assets), and using Estrella med to compete with HLIC and CHLIC.

138.    As a direct and proximate result of Faulkner's breach of his fiduciary duties, HLIC has been damaged in an amount to be proved at trial.

### FIFTH CAUSE OF ACTION
**(Aiding and Abetting Breach of Fiduciary Duty- against Gloria Faulkner, Elliott Faulkner, Aaron Faulkner, and Estrella Med)**

139.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95 and118 through 138.

140.    Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Elliott Faulkner, and Aaron Faulkner were aware and knew of the fiduciary relationship between Faulkner and Dr. She.

141.    Faulkner breached his fiduciary duties to Dr. She as alleged herein.

142.    Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, and Estrella Med aided and abetted Faulkner in plundering HLIC and diminishing Dr. She's shares by taking a salary even when she did not work for HLIC and was owner and operator of Estrella Med.

143.    Gloria Faulkner, Elliott Faulkner, and Aaron Faulkner aided and abetted Faulkner in plundering HLIC and diminishing Dr. She's shares by misusing HLIC's corporate funds for their own personal use and gain.

144.    Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, and Estrella Med aided and abetted Faulkner in plundering HLIC and diminishing Dr. She's shares by using HLIC's IP without authorization for Estrella Med's benefit.

145.    As a result of Defendants' unlawful and unethical conduct, Dr. She has not received his HLIC distribution, his HLIC shares and interest in CHLIC have been devalued, Dr. She has been denied his right to inspect HLIC's corporate books and records, and Dr. She cannot sell his shares to Juliu resulting in the need to litigate to enforce his rights.

## SIXTH CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty- against Faulkner and IMSI)

146.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95 and 118 through 138.

147.    Faulkner was aware and knew of the fiduciary duty Gloria Faulkner, Elliott Faulkner, and Aaron Faulkner had to HLIC and Dr. She.

148.    Gloria Faulkner, Elliott Faulkner, Aaron Faulkner breached their fiduciary duties to HLIC and Dr. She as alleged herein.

149.    Faulkner aided and abetted Gloria Faulkner in plundering HLIC and diminishing Dr. She's shares by taking a salary even when she did not work for HLIC and was owner and operator of Estrella Med.

150.    Faulkner aided and abetted Gloria Faulkner, Elliott Faulkner, and Aaron Faulkner in plundering HLIC and diminishing Dr. She's shares by misusing HLIC's corporate funds for their own personal use and gain.

151.    Faulkner aided and abetted Gloria Faulkner by acting as the impetus and driving force in setting up Estrella Med and using Gloria Faulkner to run and operate Estrella Med to hide his involvement.

152.    Faulkner further aided and abetted Gloria Faulkner in plundering HLIC and diminishing Dr. She's shares by using HLIC's intellectual without authorization for Estrella Med's benefit.

153.    As a result of Faulkner's unlawful and unethical conduct, Dr. She has not received his HLIC distribution, his HLIC shares and interest in CHLIC have been devalued, Dr. She has been denied his right to inspect HLIC's corporate books and records, and Dr. She cannot sell his shares to Juliu, resulting in the need to litigate to enforce his rights.

## SEVENTH CAUSE OF ACTION
### (Promissory Estoppel and Quantum Meruit)

154.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95.

155.    To the extent that a contract does not govern the obligation of Faulkner/IMSI to the Dr. She, Plaintiff pleads this claim in the alternative.

156.    Faulkner readily informed Dr. She that he was not opposed to Dr. She selling his shares to Juliu and agreed that Dr. She and Juliu could conduct due diligence on and audit HLIC.

157.    Dr. She reasonably and justifiably relied upon Faulkner's representations when Dr. She executed the agreement with Juliu to sell his shares.

158.    As Faulkner now has gone back on his word and refuses to allow Dr. She and Juliu

to conduct due diligence and audit HLIC so Dr. She's sale to Juliu can be effectuated, Faulkner is

liable to Dr. She under the equitable doctrine of promissory estoppel.

159.    Moreover, Plaintiff conferred benefits upon Faulkner, IMSI and HLIC, including

but not limited to capital investment in HLIC in exchange for shares in which distributions and

dividends are to be paid to Dr. She and the sharing of intellectual property including patents and

FDA 510K certificates.

160.    Faulkner has appreciated or realized the benefits conferred by Dr. She without

compensating Dr. She.

161.    As such, Faulkner, IMSI, and HLIC are liable to Plaintiff under the theories of

quantum meruit and/or unjust enrichment, for the value of the benefits conferred upon Falkner,

IMSI, and HLIC.

## EIGHT CAUSE OF ACTION
### (Fraudulent Concealment against Faulkner, Gloria Faulkner, Elliot Faulkner, and Aaron Faulkner)

162.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95.

163.    Faulkner, Gloria Faulkner, Elliot Faulkner, and Aaron Faulkner had knowledge that

they:

a.      set up Estrella Med to take HLIC's place;

b.      misused HLIC's credit;

c.      misused and misappropriated HLIC's IP for Estrella Med's gain; and

d.      misused HLIC's corporate funds.

164.    Faulkner, Gloria Faulkner, Elliot Faulkner, and Aaron Faulkner suppressed these material facts by hiding evidence of these wrongful acts and denying Dr. She the opportunity and ability to investigate and further discover such facts by refusing to allow Dr. She to audit and inspect HLIC's cooperate books and records.

165.    Dr. She cannot know the full extent of Faulkner and his family's self-dealing and improper transactions without the audit as Faulkner or his family have purposely attempted to conceal their wrongdoing from Dr. She.

166.    Faulkner and his family withheld this information and continue to hide this information from Dr. She in order to avoid being sued or removed as Officer and Director of HLIC and to avoid possible criminal prosecution for their actions.

167.    Faulkner and his family's representations to Dr. She and the information provided to Dr. She intentionally misled Dr. She to believe Faulkner and his family were competently running HLIC and not plundering HLIC in order to create a new company Estrella Med which would take the place of HLIC and cause irreparable harm to Dr. She and his interests.

168.    As a result of Faulkner and his family's concealment and efforts to continue to conceal, Dr. She has sustained injury and his shares continue to be devalued due to their hidden and unlawful conduct.

## NINTH CAUSE OF ACTION
### (Civil Conspiracy- against Gloria Faulkner, Elliot Faulkner, Aaron Faulkner and Estrella Med)

169.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95.

170. Faulkner, IMSI, Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Estrella Med, Elliott Faulkner, and Aaron Faulkner agreed, by words, conduct or both, to, among other things, deprive Dr. She his ability to sell his shares and diminish the value of Dr. She's shares.

171. IMSI, Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Estrella Med, Elliott Faulkner, and Aaron Faulkner agreed, by words, conduct, or both, to, among other things, deprive Dr. She his ability to sell his shares and diminish the value of Dr. She's shares.

172. Faulkner, IMSI, Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Estrella Med, Elliott Faulkner, and Aaron Faulkner agreed, by words, conduct or both, to, among other things, deprive Dr. She his ability to sell his shares and diminish the value of Dr. She's shares to the benefit of the Faulkner, his family and Estrella Med.

173. One or more acts were performed Faulkner, IMSI, Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Estrella Med, Elliott Faulkner, and Aaron Faulkner to accomplish the goal of depriving Dr. She of his ability to sell his shares, diminish the value of his shares, and plunder and harm HLIC to the benefit of Faulkner, his family and Estrella Med.

174. IMSI, Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Estrella Med, Elliott Faulkner, and Aaron Faulkner agreed, by words, conduct or both, to, among other things, deprive Dr. She his ability to sell his shares and diminish the value of Dr. She's shares.

175. Plaintiff has incurred damages and/or losses, including but not limited to, the value of his shares and his opportunity to sell his shares for millions of dollars.

176.    Plaintiff's damages and/or losses were cause by the acts of Faulkner, IMSI, Gloria Faulkner, Gloria Faulkner as owner and operator of Estrella Med, Estrella Med, Elliott Faulkner, and Aaron Faulkner.

## TENTH CAUSE OF ACTION
### (Conversion- against Faulkner, IMSI, Gloria Faulkner, Elliot Faulkner, Aaron Faulkner and Estrella Med)

177.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95.

178.    Defendants intentionally conspired to convert and did convert HLIC's intellectual property and the amount owed to Dr. She for his distribution to their own use and benefit knowing that they did not have any legal right, justification, or claim to HLIC's intellectual property and the amount owed to Dr. She for his distribution.

179.    Defendants intentionally, wrongfully, and illegally asserted dominion over HLIC's intellectual property when Faulkner and Gloria Faulkner formed and operated Estrella Med without legally being entitled to use HLIC's intellectual property for Estrella Med's benefit.

180.    Defendants intentionally, wrongfully, and illegally asserted dominion over Dr. She's distribution when they conspired to use these funds for their own use and benefit.

181.    The HLIC intellectual property wrongfully taken by Defendants was HLIC's rightful property as well as Dr. She's, through his ownership of HLIC.

182.    Dr. She's distribution wrongfully taken by Defendants was Dr. She's rightful property which Dr. She was entitled to under the Bylaws and given HLIC's profits in 2017.

183.    HLIC's IP and Dr. She's distribution remains in the possession of the Defendants.

184.    Defendants' conduct has been and continues to be egregious, willful and wanton warranting an award of exemplary damages.

## ELEVENTH CAUSE OF ACTION
**(Ultra Vires Acts under Wyo. Stat. Ann. § 17-16-304- against Faulkner)**

185.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95 and118 through 138.

186.    Faulkner as CEO and director of HLIC acted outside the authority of the Company as alleged herein.

187.    As a direct result of Faulkner's unethical and unlawful actions Dr. She has suffered damages.

188.    Dr. She brings this cause of action individually and derivatively on behalf of HLIC.

## TWELFTH CAUSE OF ACTION
**(Injunctive Relief to Remove Faulkner for Breach of Fiduciary Duty)**
**(Individually and Derivatively on behalf of HLIC against Faulkner)**

189.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95 and118 through 138.

190.    Dr. She and HLIC will suffer irreparable harm if Faulkner is permitted to continue as CEO, officer and director of HLIC.

191.    If Faulkner is permitted to continue as HLIC's CEO, officer and director, the value of Dr. She's shares will continue to diminish significantly and Dr. She will be unable to sell his shares.

192.    If Faulkner is permitted to continue as HLIC's CEO, officer and director, Faulkner and his family will continue to plunder HLIC for the benefit of Estrella Med and HLIC will be irreparably harmed.

193.   Dr. She and HLIC have a very high probability of success on the merits.

194.   The threaten and continuing injury to HLIC and Dr. She outweighs the harm that the injunction may cause to Faulkner.

195.   If an injunction is issued, it will not adversely affect the public interest.

196.   The requested injunctive relief is necessary to protect HLIC and Dr. She's legitimate business interests.

197.   As such, temporary and permanent injunctive relief in removing Faulkner as HLIC's CEO, officer, and director is necessary and warranted.

198.   Moreover, an appointment of a receiver of HLIC to appoint a new CEO and director of HLIC is necessary and warranted upon such terms and conditions as the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets against Gloria Faulkner and Estrella Med)

199.   Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95 and 118 through 138.

200.   Gloria Faulkner and Estrella Med misappropriated HLIC's (including Dr. She's 50%) interest in proprietary, confidential and trade secret information of HLIC, a Wyoming company, in violation of the Wyoming Uniform Trade Secret Act (Wyo. Stat. Ann. §§ 40-24-101 *et. seq.*).

201.   HLIC and Dr. She have spent significant resources and time in developing specialized, proprietary, confidential and trade secret information regarding its products and technology ("trade secret information").

202. HLIC and Dr. She's trade secret information derives actual economic value to HLIC and Dr. She from not being generally known to and not being readily ascertainable by proper means to others who can obtain economic value from its disclosure or use and is subject to HLIC's and Dr. She's efforts that are reasonable under the circumstances to maintain its secrecy.

203. Gloria Faulkner as HLIC employee and as owner and operator of Estrella Med and Estrella Med misappropriated trade secret information by acquiring such information with knowledge that the trade secret information was acquired by improper means.

204. Gloria Faulkner as HLIC employee and as owner and operator of Estrella Med and Estrella Med further misappropriated HLIC's and Dr. She's trade secret information by disclosing or using such information without express or implied consent by using improper means to acquire knowledge of trade secret information; and at the time of disclosure or use, knew or had reason to know that its knowledge of the trade secret information was 1) derived from or through a person who has utilized improper means to acquire it; 2) acquired under the circumstances given rise to a duty to maintain its secrecy or limits its use; or 3) derived from or through a person who owed a duty to the persons seeking relief to maintain its secrecy or limit its use.

205. As a direct result of Gloria Faulkner as HLIC employee and as owner and operator of Estrella Med and Estrella Med's actions as alleged herein, HLIC and Dr. She have been irreparably, materially, and substantially harmed and damaged in an amount to be proven at trial.

## FOURTEENTH CAUSE OF ACTION
### (Intentional or Tortious Interference with a Business Expectancy/Prospective Advantage or Opportunity against Faulkner, IMSI, Gloria Faulkner and Estrella Med)

206. Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 95 and118 through 138.

207.    Dr. She has a business expectancy and/or prospective economic advantage or opportunity with Juliu.

208.    Defendants had knowledge of this business expectancy and/or prospective economic advantage or opportunity.

209.    Defendants intentionally and improperly interfered with this business expectancy and/or prospective economic advantage or opportunity, preventing, blocking and/or intentionally interfering with Dr. She's business expectancy and/or prospective economic advantage or opportunity with Juliu.

210.    HLIC has a business expectancy and/or prospective economic advantage or opportunity with it customers and potential customers in the business of producing and selling medical devices.

211.    Defendants had knowledge of this business expectancy and/or prospective economic advantage or opportunity.

212.    Defendants intentionally and improperly interfered with this business expectancy and/or prospective economic advantage or opportunity by utilizing HLIC's resources, trade secrets, intellectual property, and marketing and selling medical devices to HLIC customers or potential HLIC customers on behalf of Estrella Med.

213.    As a direct result of Defendants' actions as alleged herein, Dr. She and HLIC have been irreparably, materially, and substantially harmed and damaged in an amount to be proven at trial.

## FIFTEENTH CAUSE OF ACTION
### (Intentional or Tortious Interference with a Contract, against Faulkner and IMSI)

214.    Dr. She realleges and reasserts all allegations contained in paragraphs 1 through 117.

215.    Dr. She has a contract with Juliu to sell his shares.

216.    Defendants had knowledge of this contract.

217.    Defendants intentionally and improperly interfered with this contract by preventing, blocking and/or intentionally interfering with Dr. She's contract with Juliu.

218.    As a direct result of Defendants' actions as alleged herein, Dr. She has been irreparably, materially, and substantially harmed and damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment including the following against Defendants:

1.    An order from the Court declaring that Plaintiff is entitled to inspect the books and records of HLIC through an agent of his choosing.

2.    For immediate injunctive relief prohibiting Defendants from inhibiting Plaintiff's right to inspect and copy the records of HLIC.

3.    For injunctive relief to remove Faulkner as HLIC's CEO and director.

4.    For injunctive relief to appoint a receiver of HLIC to elect a new CEO and director of HLIC.

5.    For monetary damages caused as a direct and proximate result of Defendants' refusal to provide access to HLIC's books and records.

6.    For monetary damages caused as a direct and proximate result of Defendants' misconduct and wrongful actions.

7.     For exemplary damages given Defendants' egregious, willful and wanton

conduct.

8.     Any other specific relief alleged herein, including costs and attorney fees incurred

in bringing this action;

9.     Pre- and post-judgment interest on all damages as allowed by law;

10.    Such other and further relief as this Court deems reasonable and just.

DATED this 14th day of August 2018.

MATHEY LAW OFFICE, P.C.

Danielle M. Mathey
*Attorneys for Plaintiff Dr. Limin She*

**Plaintiffs' Address:**
C/O Brian M. Gargano
NGUYEN CHEN LLP
11200 Westheimer Ste 120
Houston, Texas 77042

## RULE 23.1 VERIFICATION

I, Dr. Limin She, have at all relevant times been a director and shareholder of Health Line International Corp. ("HLIC"). I have reviewed the allegations made in this Complaint. The allegations in the Complaint about which I have personal knowledge are true. As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information. Having received a copy of this Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of August, 2018.

_____
Dr. Limin She